Edward J. Reilly (VA Bar. No. 82562)
Email: ReillyEd@sec.gov

Ada Fernandez Johnson (VA Bar No. 42751)
Email: JohnsonAdaF@sec.gov

Katherine H. Stella (NY Bar No. 4893723)
Email: StellaK@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street NE
Washington DC 20549
Telephone: (202) 551-6791 (Reilly)
Facsimile: (202) 551-9287

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MARKMAN BIOLOGICS CORP. and ALAN SHINDERMAN,<br><br>Defendants,<br><br>*and*<br><br>ASPEN ASSET MANAGEMENT SERVICES, LLC<br><br>Relief Defendant. | Case No. 2:23-cv-288<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission"), for its Complaint against Defendants Markman Biologics Corp. and Alan Shinderman and Relief Defendant Aspen Asset Management Services, LLC, alleges as follows:

COMPLAINT                                    1

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77v(a) and 77t(d)], and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(3), 78u(e), and 78aa].

2. In connection with the conduct alleged in this Complaint, Markman Biologics Corp. ("Markman Biologics") and Alan Shinderman ("Shinderman") (together, "Defendants") have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange.

3. Venue is proper in this district pursuant Section 22(a) of the Securities Act [15 U.S.C. § 78v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 77aa], because a substantial part of the events or omissions that give rise to claims alleged in this Complaint occurred in this District, including between November 2019 to at least November 2022 (the "relevant time period"). Defendant Markman Biologics was a Nevada corporation throughout the relevant time period. Markman Biologics was also headquartered in this District from approximately December 2017 until at least mid-2021, during part of the relevant period. Defendant Shinderman resided in this District from at least December 2017 until at least mid-2021, much of the relevant time period. And Relief Defendant Aspen Asset Management Services LLC ("AAM") was a Nevada limited liability company during the relevant time period. Numerous Markman Biologics investors also reside in the District.

**SUMMARY**

4. This case involves four fraudulent, unregistered offerings of Markman Biologics' securities and the misappropriation of investor funds by Alan Shinderman, Markman Biologics' President and CEO, who has already been enjoined by this Court from violating the antifraud provisions of the federal securities laws.

5. From November 2019 to at least November 2022, Markman Biologics and Shinderman raised least approximately $1,276,000 from no fewer than 85 investors, selling them Markman Biologics securities without registering the offerings with the Commission. Defendants

also made materially false and misleading statements to investors as part of the securities offerings, regarding, among other things, how Markman Biologics would use investor assets and Markman Biologics' transactions with related parties. Moreover, because Shinderman is a recidivist "bad actor" – having previously been enjoined by this Court from future violations of the antifraud provisions of the Exchange Act in *SEC v. Quicksilver Stock Transfer LLC and Alan Shinderman*, Case No. 2:18-cv-00131 (D. Nev.) ("the *Quicksilver* Action") – Defendants could not rely on the registration exemptions outlined in Rule 506 of Regulation D of the Securities Act [17 C.F.R. § 230.506(d)]. Accordingly, Markman Biologics' unregistered securities offerings violated the registration provisions of the Securities Act.

6. Defendants also falsely and fraudulently represented to investors in a section of their offering materials titled "Executive Compensation" that "no compensation has been paid." This was not true, because Shinderman was paid. At the time these statements were made, Shinderman had already signed an executive compensation agreement with Markman Biologics – Shinderman signing on behalf of himself *and* Markman Biologics – and immediately after receiving investor funds in November 2019, Shinderman began misappropriating the proceeds.

7. Defendants further falsely claimed that Markman Biologics had not engaged in any transactions with related parties (*i.e.*, transactions with individuals or entities that are affiliated with Markman Biologics' executives). However, Shinderman also caused his wholly-owned company, AAM, to enter into a separate agreement with Markman Biologics.

8. Ultimately, Shinderman misappropriated at least approximately $493,000 of the investors' assets – more than a third of all funds raised – to pay himself, his personal expenses, and his company AAM. Shinderman used these purloined investor assets to pay for, among other things, a luxury vehicle, delinquent personal debts, AAM's rent, personal medical bills, personal travel, and expensive meals. The misappropriated investor assets included more than $30,000 in cash that Shinderman withdrew from Markman Biologics' bank accounts.

9. As part of Defendants' scheme, Shinderman, on Markman Biologics' behalf, also signed and filed with the Commission three Forms D, Notice of Exempt Offerings of Securities, seeking exemption from the registration provisions of Section 5 of the Securities Act, falsely

certifying that Markman Biologics was not disqualified from relying on a Regulation D exemption. Markman Biologics was not eligible for the exemption because this Court's prior injunction rendered Shinderman a "bad actor" under Regulation D, a status imputed to Markman Biologics which precluded it from relying on a Regulation D exemption from registration of a securities offering.

10. Through the fraudulent scheme, Defendants unjustly benefited from their violations of the securities laws, receiving ill-gotten gains to which they had no legitimate claim.

11. By engaging in this conduct, Shinderman and Markman Biologics violated Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder. Unless restrained and enjoined, Defendants will continue to violate these provisions and are likely to engage in future violations of the federal securities laws.

12. The SEC seeks permanent injunctions; disgorgement of Defendants' and AAM's ill-gotten gains derived from the conduct alleged in the Complaint plus prejudgment interest thereon; civil penalties against Defendants; and an officer and director and penny stock bar against Shinderman.

### THE DEFENDANTS

13. **Alan Shinderman**, age 68, is a resident of Frisco, Texas. Since December 2017, Shinderman has been the President, Chief Executive Officer, Secretary, and Treasurer of Markman Biologics, where he is also a member of its Board of Directors. Shinderman simultaneously solely-owned and operated AAM, which he founded in or around 1995. As noted, Shinderman is a recidivist having been enjoined by this Court in the *Quicksilver* Action from committing future violations of Section 10(b) of the Exchange Act.

14. **Markman Biologics Corp.** is a private Nevada State corporation with its principal place of business in Dallas, Texas. Markman Biologics holds patents regarding micro-surfacing skin grafts and is working to commercialize this medical technology. Markman Biologics is not registered with the SEC in any capacity.

**THE RELIEF DEFENDANT**

15. **Aspen Asset Management Services, LLC**, is a Nevada Commercial Registered Agent, which provided corporate development services for public and private companies, and is solely-owned, by Shinderman. AAM's principle place of business is in Las Vegas, Nevada. AAM has not been registered with the SEC in any capacity.

**THE FACTS**

A. **Shinderman's "Bad Actor" Status**

16. From September 2008 through 2019, Shinderman was the president and sole owner of Quicksilver Stock Transfer, LLC ("Quicksilver"), a transfer agent registered with the SEC. In January 2018, the SEC filed a complaint in this District against Shinderman and Quicksilver, captioned *SEC v. Quicksilver Stock Transfer LLC and Alan Shinderman*, Case No. 2:18-cv-00131-JCM-BNW (D. Nev.). In its complaint, the SEC alleged that, in or around August 2013, Shinderman misappropriated approximately $630,000 from a Quicksilver client.

17. On July 26, 2019, upon Shinderman's consent in which he did not admit or deny the facts alleged in the SEC's complaint, this Court issued a Final Judgment as to Shinderman, ordering, among other things, that Shinderman "is permanently restrained and enjoined" from violations of Section 10(b) and 17(a)(d)(1) of the Exchange Act and Rules 10b-5 and 17Ad-12 thereunder as well as from aiding and abetting any future violations of Section 17(a)(d)(1) of the Exchange Act and Rule 17Ad-13 thereunder, and to pay a $50,000 civil penalty. *SEC v. Quicksilver Stock Transfer LLC and Alan Shinderman*, Case No. 2:18-cv-00131 (DNV) (Docket No. 43). As noted, this Section 10(b) injunction made Shinderman a bad actor for a period of five years pursuant to Rule 506(d)(1)(ii)(A) of Regulation D [17 C.F.R. § 230.506(d)(1)(ii)(A)].

18. As of the date of this Complaint, Shinderman has not paid in full the $50,000 civil penalty ordered in the *Quicksilver* Action.

B. **Shinderman Joins and Runs Markman Biologics**

19. In December 2017, a month before the SEC sued Shinderman in the *Quicksilver* Action, Shinderman joined Markman Biologics as CEO, President, Secretary, and Treasurer. To formalize his employment, Shinderman executed an employment agreement on behalf of *both*

COMPLAINT 5

himself and Markman Biologics, wherein he set his own annual compensation at $120,000, and provided that compensation would be paid if funds were available after all Markman Biologics' expenses were paid for the month. The employment agreement stated explicitly that Shinderman's missed wages would not accumulate and would not be paid at a later date.

20. The same month, Shinderman's company AAM, entered into a Representation Agreement with Markman Biologics, which arranged for AAM to provide the services to take Markman Biologics public, *i.e.*, conduct Markman Biologic's initial public offering by selling shares of the company to the public. Shinderman signed the agreement on behalf of AAM.

### C. Markman Biologics' Securities Offerings

21. In or around November 2019, Defendants began raising money from investors purportedly for Markman Biologics' operations by selling common stock and warrants (a type of security that, here, allowed the holder to purchase Markman Biologics stock in the future at a set price). In Defendants' general solicitation of investors, they asked friends, family, and existing shareholders to distribute Markman Biologics' offering materials to their contacts by email and to refer any prospective investors to them. Shinderman and others at his direction, also approached members of the public in social settings, including at a gym and a birthday party, to solicit investors. From approximately November 2019 to March 2022, pursuant to three separate offerings, Defendants solicited and raised approximately $1,110,000 from 80 investors across the United States, including from investors in Nevada, California, Texas, and Florida, selling them over 10 million shares of Markman Biologics' common stock and over 16 million warrants. In connection with these three offerings, Defendants provided prospective investors with three separate Private Placement Memoranda ("PPM") describing each offering.

22. Between April 2022 and November 2022, pursuant to a fourth offering, Defendants solicited and raised another approximately $165,000 from approximately seven investors, selling them Markman Biologics' convertible notes, *i.e.*, notes that allowed the holder to convert repayment of their investment into shares of Markman Biologics' stock. As of November 2022, investors had converted some notes into at least 800,000 shares of common stock. In soliciting investors for this fourth offering, Shinderman sent prospective investors PPMs he and Markman Biologics had used

in the three prior offerings.

23. A summary of the four securities offerings is as follows:

| Markman Biologics Securities Offerings | | | | | |
|---|---|---|---|---|---|
| Securities Offering No. | Dates of Offering (Approx.) | Date of Form D | Money Raised (Approx.) | Common Stock issued (Approx.) | Warrants Issued (Approx.) |
| 1 | 11/2019 – 12/2020 | 5/12/2020 | $384,000 | 4.1 million | 4.7 million |
| 2 | 1/2/2021 – 8/24/2021 | 1/2/2021 | $486,000 | 3.6 million | 6 million |
| 3 | 8/25/2021 – 3/31/2022 | 8/25/2021 | $241,000 | 2.6 million | 6 million |
| 4 | 4/2022 – 11/2022 | None filed | $165,000 | At least 800,000 shares converted from notes | None |
| Total | | | $1,276,000 | 11.1 million | 16.7 million |

24. Markman Biologics' securities were offered and sold through interstate commerce. Shinderman communicated with investors and prospective investors by email and by telephone. In addition, at Defendants' instruction, investors sent checks, or wired money, to a bank account in the name of Markman Biologics. Shinderman controlled Markman Biologics' bank account and was the only person with access to the account.

25. Defendants did not file registration statements with the SEC for any of the four Markman Biologics' offerings. Shinderman, as President of and on behalf of Markman Biologics, signed and filed with the SEC three Forms D, Notice of Exempt Offerings of Securities, corresponding to the first three offerings, on May 12, 2020, January 2, 2021, and August 21, 2021, respectively. Shinderman supplied the information for the three Forms D filed with the SEC and had ultimate authority over the content of the Forms D. Defendants did not file a Form D for the fourth offering.

26. The Forms D Shinderman signed and filed each contained several false certifications and misleading statements. In particular, Shinderman certified that each offering was not disqualified from relying on a Regulation D exemption for any of the reasons stated in Rule 506(d).

1. This certification was false when made because, as alleged in more detail in paragraphs 44-53 below, Rule 506(d) expressly states that the exemption is unavailable if any of the individuals participating in the offering are "bad actors," which includes anyone who, like Shinderman, is subject to a court judgment, within the past five years, that permanently enjoins such person from engaging or continuing to engage in any securities law violations.

27. In addition, in each Form D, Defendants falsely stated that no portion of the gross proceeds of the offering had been, or were proposed to be, used to pay any of the executive officers, directors or promoters of Markman Biologics. These statements were false when made because Shinderman had already executed an employment agreement on behalf of *both* himself and Markman Biologics, setting his annual compensation at $120,000, and had already misappropriated investor funds for himself when each Form D was filed.

**D. Shinderman Misappropriated Markman Biologics' Investors' Funds**

28. Between November 2019 and November 2022, Shinderman misappropriated approximately $493,000 – almost a third of all the funds raised – of Markman Biologics' investors' assets to benefit himself and AAM. Shinderman misappropriated investor assets in three ways, paying himself compensation when Defendants told investors explicitly that no executive compensation had been or would be paid, taking money – including cash withdrawals – to pay his personal expenses, and sending money to, and paying expenses for, AAM.

29. In Markman Biologics' offering materials, Defendants misrepresented how investors' funds would be used. Each of the PPMs claimed that Defendants "intend to use the net proceeds of this offering for clinical medical trials . . . and general corporate and working capital purposes," but they falsely and misleadingly also claimed that no investor funds had been used for executive compensation. Despite these statements and others Shinderman made on Markman Biologics' behalf in the PPMs and the Forms Ds filed with the SEC, he began to misappropriate investor funds within days of receiving them starting in November 2019.

30. Shinderman maintained sole control and authority over Markman Biologics' finances, including Markman Biologics' bank account. As of mid-2022, Markman Biologics had not yet earned any revenue on its skin-grafting product and, thus, the vast majority of the cash in its

bank account was from investors.

31. In spite of Defendants' representations to the contrary, Shinderman used investor funds to pay himself more than $177,000, via bank transfers and checks written from Markman Biologics' account, and also withdrew approximately $31,000 in cash from the account. Shinderman also used approximately $52,000 of the investors' funds to pay his personal debts and expenses, including to pay (i) personal debts owed by Shinderman, (ii) personal medical bills and related travel, (iii) rent on his residential apartment, (iv) meals and hotels in Las Vegas, and (v) his luxury car and related car insurance bills.

32. Finally, between January 2020 and October 2021, Shinderman also misappropriated more than $233,000 of Markman Biologics' investor funds for AAM. Among other things, he used the stolen money to pay himself additional funds and to pay AAM's office rent.

33. AAM had no legitimate claim to the money that it received from Markman Biologics. While Shinderman, on behalf of AAM, entered into the representation agreement with Markman Biologics in 2017, that $50,000 fee was paid in full by Markman Biologics' founder at that time. Moreover, each of the three PPMs expressly stated that Markman Biologics had not entered into any related party transactions.

34. Markman Biologics' investors were not aware that their funds were being used for these undisclosed purposes, including to pay for Shinderman's personal expenses, to fund his solely-owned business, and as undisclosed compensation. Reasonable investors would have considered it important in making their investment decision to know that their funds were being used for purposes other than what was stated in the PPMs and Forms D and, in particular, that more than a third of investor funds were being used for Shinderman's personal benefit.

**E. The Offering Materials Contained Material Misrepresentations**

35. Defendants prepared and distributed at least three PPMs, one corresponding to each of the Forms D described above, that they used to solicit investors in the four Markman Biologics' offerings. Shinderman drafted and had final editorial control and ultimate authority over the content of each PPM.

36. As a direct result of Shinderman's misconduct, each PPM included several materially false and misleading statements about Shinderman's compensation. All three PPMs, for example, had a section entitled "Executive Compensation" that stated that "[a]s of this date no compensation has been paid." Shinderman and his offering materials, including the PPMs, failed to disclose that, at the time Defendants provided the PPMs to investors, Shinderman had already executed an employment agreement on behalf of *both* himself and Markman Biologics, setting his annual compensation at $120,000.

37. More to the point, on November 7, 2019, two days after Shinderman received the first investor's funds, he took approximately $22,000 of the approximately $23,000 invested for himself. Even after November 7, 2019, Shinderman and Markman Biologics continued to represent to prospective investors, through the PPMs, that "[a]s of this date no compensation has been paid." Shinderman, and thus Markman Biologics, knew or were reckless in not knowing that those representations were false when made because Shinderman's own actions, *i.e.*, taking the money for himself, made them false. Reasonable investors would have considered it important in making their investment decision to know that, contrary to the statements in the offering materials, Shinderman, an officer of Markman Biologics, was compensating himself with investor funds.

38. Each of the PPMs also falsely stated that none of Markman Biologics' officers and/or directors had a material interest in any Markman Biologics transaction. These statements were false when made because, as Shinderman, and thus Markman Biologics, knew or were reckless in not knowing, Shinderman had already caused AAM, his wholly-owned company, to enter into contracts with Markman Biologics. Reasonable investors would have considered it important in making their investment decision to know that, contrary to the statements in the offering materials, Shinderman had caused his wholly-owned company to enter into contracts with Markman Biologics.

39. Finally, each of the PPMs also contained materially false and misleading statements regarding Shinderman and AAM assisting over 120 companies with corporate development activities, including taking companies public, and Markman Biologics' ability to rely on certain exemptions from the registration requirements of the federal securities laws. These statements were

materially false and misleading because, having chosen to speak on these topics, Defendants failed to explain that many of these companies were clients of Quicksilver, not AAM, and that Shinderman had been enjoined by this Court in the *Quicksilver* Action from committing future violations of the antifraud provisions of the Exchange Act in connection with his work at Quicksilver. Reasonable investors would have considered it important in making their investment decision to know that Shinderman's prior conduct with Quicksilver rendered him a "bad actor" and that Markman Biologics could not, therefore, rely on the registration exemptions of Rule 506 of Regulation D as they had been told.

40. Shinderman personally sent copies of each PPM – knowing, or recklessly not knowing, that they contained these materially false and misleading statements – to Markman Biologics' investors and prospective investors via email and caused copies to be sent via regular mail.

**F. Defendants Acted With Scienter**

41. Shinderman and Markman Biologics acted with scienter. Shinderman, as Markman Biologics' President and CEO, had ultimate authority and control over the content of the PPMs and Forms D. Shinderman, and thus Markman Biologics, knew, or were reckless in not knowing, that the PPMs and Forms D contained materially false and misleading statements regarding the use of investor proceeds, Shinderman's compensation, related party transactions, and Markman Biologics' ability to rely on a Regulation D exemption from registering its securities offerings, because it was Shinderman's own conduct that rendered each of them false and misleading. Shinderman was, for example, the person with sole authority and control over Markman Biologics' bank accounts and the very person who engaged in the banking transactions that effected the misappropriation. For the same reason, Defendants also knew, or were reckless in not knowing, that investor funds were being misappropriated and misused, either for undisclosed compensation or, often, for Shinderman's personal expenses.

42. In addition, Defendants knew or were reckless in not knowing that their statements regarding Shinderman's business experience and Markman Biologics' ability to rely the Rule 506 registration exemptions were materially false and misleading, because Shinderman drafted a Form

S-1 he planned to use to take Markman Biologics public in which he disclosed these facts. He did not, however, share this draft with any Markman Biologics' investors.

43. Defendants Shinderman and Markman Biologics also failed to exercise reasonable care when making these materially false and misleading statements in the PPMs and Forms D, and when they misappropriated investor assets, and, thus, were also at least negligent.

**G. Defendants' Registration Violations**

44. Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)] make it unlawful for any person, directly or indirectly, to use interstate commerce or the mails, to send a security unless a registration statement is in effect as to the security, or to offer to sell a security unless a registration statement has been filed as to such security. A registration statement is transaction specific. Each offer and sale of a security must either be made under a registration statement or fall under a registration exemption.

45. The four offerings described in paragraphs 21-27 were offerings of securities. Each investor holding Markman Biologics' securities invested money in a common enterprise, namely the development of Markman Biologics' micro surfacing skin-grafting technology, with the expectation that any profits derived from its development would come solely through the efforts of others.

46. As alleged above, no registration statements were ever filed for the securities offerings and sales of Markman Biologics securities.

47. Shinderman and Markman Biologics each directly or indirectly participated in the unregistered offers and sales of Markman Biologics securities to investors. Markman Biologics participated as the issuer of the securities, and it directly offered and sold the common stock, warrants, and convertible notes in the four unregistered offerings. Shinderman offered and sold common stock, warrants, and convertible notes, through his direct communications with investors, including sending investors and prospective investors Markman Biologics' PPMs.

48. Shinderman and Markman Biologics offered and sold securities using the means or instruments of interstate commerce, including, but not limited to, email and the mails.

49. As alleged above, Shinderman, on Markman Biologics' behalf, signed and publicly

filed with the SEC three Forms D, Notice of Exempt Offerings of Securities, falsely claiming that the offerings were each exempt from registration pursuant to Rule 506(b) under Regulation D. In these forms, Shinderman falsely certified that Markman Biologics was not disqualified from relying on Regulation D for any of the reasons stated in Rule 506(d) (the "bad actor" disqualification rule).

50. Rule 506(d), however, states, in relevant part, that no exemption is available under the rule if an individual is an executive officer, promoter, or a person that has been or will be paid (directly or indirectly) remuneration for soliciting investors who is subject to certain events, including any court judgment entered within five years before such sale of securities that, at the time of such sale, restrains or enjoins such person from engaging or continuing to engage in any securities law violations.

51. The July 26, 2019 Final Judgement this Court ordered against Shinderman in the *Quicksilver* Action permanently restrained and enjoined him from violations of Section 10(b) of the Exchange Act and triggered the bad actor disqualification rule. Markman Biologics' offerings were, therefore, not permitted to rely on the Rule 506 registration exemption in Regulation D.

52. Markman Biologics, which was controlled by Shinderman at the time the Forms D were filed, lacked a reasonable basis for not knowing of the disqualifying event and, therefore, cannot rely on Rule 506(d)(2)(iv) to avoid this outcome.

53. Moreover, Defendants are not able to rely on any other registration exemptions. For example, Defendants cannot rely on Securities Act Section 4(a)(2) [15 U.S.C. §77d-L11] because the offerings used general solicitation. Nor can Defendants rely on an intrastate registration exemption because, as noted, the offerings were interstate offerings.

## CLAIMS FOR RELIEF

### First Claim for Relief
### Fraud in the Offer or Sale of Securities
### (Violations of Section 17(a) of the Securities Act Against Defendants)

54. The SEC re-alleges and incorporates by reference paragraphs 1 through 53 above.

55. During the relevant time period, each Defendant, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate

commerce or by use of the mails, knowingly, recklessly, and negligently: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.  As alleged above, Defendants knowingly, recklessly, or negligently engaged in deceptive conduct and made materially false and misleading statements to investors concerning executive compensation, related party transactions, how investors' funds would be used, including for Shinderman's personal expenses, and by failing to inform investors of the *Quicksilver* Action which rendered statements about Shinderman's biography and Markman Biologics' qualification for a Regulation D exemption materially misleading.

56.     By engaging in the conduct described above, each of the Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### Second Claim for Relief
### Fraud in Connection with the Purchase or Sale of Securities
### (Violations of Section 10(b) of the Exchange Act and
### Rules 10b-5 Thereunder Against Defendants)

57.     The SEC re-alleges and incorporates by reference paragraphs 1 through 53 above.

58.     During the relevant time period, each Defendant, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, knowingly and recklessly: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.  As alleged above, Defendants knowingly or recklessly engaged in deceptive conduct and made materially false and misleading statements to investors concerning executive compensation, related party transactions, how investors' funds would be used, including for Shinderman's personal

expenses, and by failing to disclose the *Quicksilver* Action which rendered statements about Shinderman's biography and Markman Biologics' qualification for a Regulation D exemption materially misleading.

59. By engaging in the conduct described above, each Defendant violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

### Third Claim for Relief
### Unregistered Offers and Sales of Securities
### (Violations of Section 5(a) and 5(c) of the Securities Act Against Defendants)

60. The SEC re-alleges and incorporates by reference paragraphs 1 through 53 above.

61. By virtue of the foregoing, without a registration statement in effect as to that security, Defendants, directly and indirectly, (a) made use of the means and instruments of transportation or communications in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise; (b) carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; and (c) made use of the means and instruments of transportation or communication in interstate commerce or of the mails to offer to sell through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

62. By engaging in the conduct described above, each Defendant violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### Fourth Claim for Relief
### Unjust Enrichment
### (Against Relief Defendant AAM)

63. The SEC re-alleges and incorporates by reference paragraphs 1 through 53 above.

64. Relief Defendant AAM, directly or indirectly, received funds or assets, or benefited from the use of funds or assets, which are proceeds of the unlawful activity alleged above. It received funds, assets, and/or property, directly or indirectly, from Defendants that were obtained as

a result of the securities law violations described herein.

65. Relief Defendant AAM has no legitimate claims to such funds, assets, and/or property received, or from which they otherwise benefited, directly or indirectly.

66. The SEC is entitled to an order, pursuant to common law equitable principles – such as disgorgement, unjust enrichment, and constructive trust – and pursuant to Sections 21(d)(3), (d)(5), and (d)(7) of the Exchange Act [15 U.S.C. § 78u(d)(3), (5), (7)], requiring AAM to disgorge all of the funds, assets or property they received, either directly or indirectly from Defendants that were derived from the illegal activities described above.

**PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court enter a judgment:

**I.**

Permanently enjoining Defendants Shinderman and Markman Biologics from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**II.**

Permanently enjoining Shinderman from (1) directly or indirectly, including, but not limited to, through any entity owned or controlled by Shinderman, participating in the issuance, purchase, offer, or sale of any security, except for any transaction from his personal brokerage account, and (2) participating in the management, administration, supervision of, or otherwise exercising any control over, any commercial enterprise or project that issues, purchases, or sells securities.

**III.**

Permanently prohibiting Shinderman, under Section 20(e) of the Securities Act [15 U.S.C. § 77t(d)(4)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered under Section 12 of the

Exchange Act [15 U.S.C. § 78l] or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

### IV.

Ordering Defendants Markman Biologics and Shinderman to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains, on a joint and several basis between Markman Biologics and Shinderman pursuant to Sections 21(d)(3), (d)(5), and (d)(7) of the Exchange Act [15 U.S.C. § 78u(d)(3), (5), (7)].

### V.

Ordering Relief Defendant AAM to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains, on a joint and several basis between Shinderman and AAM.

### VI.

Ordering Defendants Shinderman and Markman Biologics to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### VII.

Ordering that Defendant Shinderman be prohibited from participating in an offering of a penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

### VIII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

IX.

Grant such other and further relief as this Court may determine to be just and necessary.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action of all issues so triable.

Dated: February 23, 2023

*s/ Edward J. Reilly*
Edward J. Reilly
Ada Fernandez Johnson*
Katherine H. Stella*
Attorneys for Plaintiff
Securities and Exchange Commission

*Pending Motion to Permit Appearance